IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| REGINA ROBINSON, | ) | C.A. No.:  2:26-cv-2209-DCN-MHC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | |
| | ) | |
| GXO LOGISTICS SUPPLY CHAIN, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT AND JURY DEMAND

The Plaintiff, Regina Robinson, by and through her attorney, Bonnie Travaglio Hunt of Hunt Law, L.L.C., hereby complain against the Defendant, GXO Logistics Supply Chain, Inc., as follows:

### Nature of the Action

1. This is an action brought pursuant to the laws of the United States of America.

2. This is an action brought pursuant to Civil Rights Act and EEO laws of the United States of America.

3. This is an Action brought pursuant to 42 U.S.C. Section 1981.

4. This is an action brought pursuant to the Laws of the State of South Carolina.

### Parties

5. Plaintiff, Regina Robinson, hereinafter referred to as the Plaintiff, is an individual who at all times relevant herein was a resident of the State of South Carolina.

6. At all relevant times as presented herein the Plaintiff was an employee as defined by Federal Law.

1

7. Plaintiff is informed and believes, and based thereon alleges, that Defendant, GXO Logistics Supply Chain, Inc., herein after referred to as "GXO" or "Defendant", is, and at all times relevant herein was a business conducting 3PL work in South Carolina. The Defendant, GXO is subject to the laws of this Court pursuant to State and Federal Law.

8. At all relevant times as presented herein the Defendant was an employer as defined by Federal Law.

## Jurisdiction and Venue

9. The Charleston Division is the proper venue for this action because this is the Circuit in which the Plaintiff resides and in which a substantial part of the events or omissions giving rise to the claims occurred.

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 as this matter presents a federal question.

11. Jurisdiction of this cause arises under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. Section 2000e-2(a) and Section 2000e-3(a), as amended by the Civil Rights Act of 1991 (CRA Section 91), 42 U.S.C. Section 1981A *et seq.*

## Procedural Prerequisites

12. On April 14, 2026, the Plaintiff properly filed a charge of discrimination based on Race Discrimination, Sex Discrimination, Retaliation with the Equal Employment Opportunity Commission and the South Carolina Human Affairs Commission. The Charge set forth the following:

*"THE PARTICULARS ARE:*
*I.     I was hired by the above-named employer on or about April 15, 2024, as a Customer Service Representative and was later*
*promoted to a Supervisor role. Between March 2025 and January 2026, I applied for multiple internal positions that would have resulted in promotional opportunities. Despite meeting both the minimum and preferred qualifications for*

2

*these roles, I was not selected for an interview for any of the positions. In contrast, similarly situated employees outside of my protected classes, including white male and white female employees, were granted interviews and selected for comparable roles. These individuals had similar or lesser qualifications than mine. When I inquired about the reasons for not being selected for interviews, I was either told I did not meet preferred qualifications or was provided no clear or consistent explanation. Based on my qualifications and experience, I believe these reasons were pretextual.*

*II. In November 2025, I filed a complaint with the company's Ethics Committee regarding the repeated denial of interview opportunities and unequal treatment. Following this complaint, I was granted an interview in December 2025 but was not selected. I continued to be denied interview opportunities for other positions after my complaint, including in January 2026. I was later granted another interview in February 2026 for a Supervisor role and was selected for that position in March 2026. This sequence of events further supports my belief that I was qualified for these opportunities earlier and was denied equal access prior to raising concerns.*

*III. I believe I have been subjected to discrimination based on my race (African American) and sex (female), and retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights of 1964, as amended."*

13.    The EEEOC issued its Right to Sue on May 15, 26.  The Determination and Notice of Rights set forth the following:

*DETERMINATION AND NOTICE OF RIGHTS*

*The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.*

*NOTICE OF YOUR RIGHT TO SUE*

*This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or*

*state court, your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's*

*official notice of dismissal. You should keep a record of the date you received the*

*EEOC's official notice of dismissal. Your right to sue based on this charge will be*

*lost if you do not file a lawsuit in court within 90 days. (The time limit for filing*

*a lawsuit based on a claim under state law may be different.)*

*If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal*

*and upload the court complaint to charge 415-2026-01390.*

14.     The Plaintiff hereby files her complaint within 90 days.

### **Factual Background**

15.     In January 2024, Ms. Robinson commenced her employment at the GXO Hanahan location through a temporary service.  While participating in Orientation, Ms. Robinson was informed by Human Resources that all temporary employment would count toward total tenure at GXO.  Human Resources also encouraged all employees to apply for promotion internally.

16.     On April 15, 2024, Ms. Robinson began her transition to full-time employment with the Defendant, as a customer service representative.  Ms. Robinson was later promoted to a Supervisor Role.

17.     On January 22, 2025, Ms. Robinson applied for Supervisor position.  Ms. Robinson had been employed with the Defendant for over a year with her temporary service credit.  Ms. Robinson was immediately rejected as not meeting the one-year service requirement.

18. In the middle of March 2025, Ms. Robison met with Senior Manager Warren Hicks to express interest and provide her resume regarding Supervisor position, #Req 361467. Hicks expressed satisfaction with Ms. Robinson's interest and promised to be in touch.

19. From March 24 to 26, 2025, Ms. Robinson applied for multiple roles with the Defendant Manager of Finance (Req #363635), Supervisor (Req #361467), Manager of Implementations - Remote (Req #362106), and Manager Site Operations - Moncks Corner (Req #359853).

20. Late March 2025, Ms. Robinson applied for a reposted Supervisor position(#Req 361467).  Ms. Robinson spoke to HR Representative Paulese Harrison for approval to apply for the position.  Mrs. Robinson officially applied for the open position on March 26, 2025.  HR Representative Harrison informed Ms. Robinson that she would consult her Senior Hr. Manager, Latessa Grice, because Ms. Robinson was so close to her one-year mark.  Harrison also stated that HR would push the application through.

21. On April 6, 2025, the Plaintiff applied for a manager position with GXO Moncks Corner (#Req 363794). Hr. Representative Paulese Harrison agreed to push the application through as the 1-year anniversary (April 15) was imminent.

22. April to May 2025, Ms. Robinson witnessed multiple job r1-yeartions closed without any communication or interview offers.  Ms. Robinson discussed this with HR Rep Harrison who informed her that Senior Manager Grice had "doubled down" on the one-year requirement and refused to allow the application to process for applications prior to April 15, 2025.

23. After this discussion, Ms. Robinson learned that a Caucasian female was promoted to a lead position and had been in that lead position less than one year, had been allowed

to not only apply (application pushed through), but also granted Interviews for several Supervisor requisitions. On May 20, 2025, Ms. Robinson Applied for Supervisor position (Req #365343) under Operations Manager Scott Dufort. Ms. Robinson reached out to Scott to let him know that she was interested in the position and that she would be submitting her application later that day. Ms. Robinson also informed her immediate Supervisor Jo Prince and onsite HR Rep. Paulese Harrison that she was applying for the position. The requisition closed June 6; 2025 no feedback received from anyone despite meeting all criteria.

24. Ms. Robinson later learned she was not selected for the position due to lack of operational experience.

25. Later, Ms. Robinson learned that while she was told she was not selected for an Interview for any Supervisor position due to lack of operational experience, she another Caucasian male with no work experience was hired as a Supervisor.

26. From June to July of 2025, Ms. Robinson applied for three additional positions: Supply Chain Director #Req 367812, SC Operations #Req 367856, and Principal Analyst #Req 366546. Per the job req postings - Ms. Robinson met all the minimum requirements for the position. Ms. Robinson requested application feedback and updates weekly but received no response from site leadership or Human Resources.

27. In Late July 2025, Ms. Robinson was informed that her applications were blocked due it being considered "jumping roles," applying for a Manager role from a Customer Service. HR Rep Harrison could not relay the specifics or provide the actual policy and deferred to Senior Management.

28. Between July and August of 2025, Ms. Robinson sought information weekly regarding the written policy about "jumping roles." No one could provide the policy and her requests for information went unanswered and ignored for 7 weeks.

29. On August 11, 2025, Ms. Robinson received an email from Sr Manager Warren Hicks apologizing for the delay and setting forth: "GXO does not typically 'jump roles' internally…as an example a lead would not make the jump to a manager without being a supervisor first." Ms. Robinson again requested the written policy regarding "jumping roles" policy.

30. From August 17 to early September 2025, the Plaintiff sent several follow up emails to Hicks with copies to HR Rep Harrison and her supervisor Prince requesting specific documentation regarding the "no jumping roles" policy. Ms. Robinson never received a response to this request.

31. On September 5, 2025, Ms. Robinson was summoned to Warren Hicks' office where she requested the written policy regarding "jumping roles" policy. Hicks informed Ms. Robinson that there was no written policy but it was an "understood" policy. Hicks informed Ms. Robinson that she lacked operational experience and that is why she was not selected. Ms. Robinson felt that Hicks was only relaying an excuse due to his nervousness and statements regarding Ms. Robinson should not be angry someone else was selected, and that he had previously interviewed her. Ms. Robinson informed Mr. Hicks that she had never been interviewed by Hicks and he reminded him of this which made him brush her off. Mr. Hicks went on to insinuate that Ms. Robinson needed to make herself more "visible" in the warehouse and that she needed to become more familiar with the other departments. Ms. Robinson had to remind Mr Hicks that as the

4th Shift Customer Service, and due to 4th Shift not being fully staffed on the weekend, she has already become familiar and cross-trained with every department in the building.

32. From September to November 2025, Ms. Robinson conducted independent research into GXO Global to try and locate a written policy regarding "jumping roles."

33. On November 9, 2025, Ms. Robinson applied for Manager SC Site Operations (Job Req # 372750 GXO – Summerville). Ms. Robinson met all of the minimum and preferred qualifications. Ms. Robinson notified her immediate supervisor (Jo Prince) and HR Rep (Paulese Harrison) that she had applied for the position. On November 14, 2025, Ms. Robinson reached out to Paulese Harrison for an update on the application. Ms. Robison was informed later the same day by HR Rep Harrison, that the recruiter for the job req informed her that Ms. Robinson would not be selected for Interview as this would be a violation of the no jumping roles policy.

34. On November 20, 2025, Ms. Robinson filed a *Formal Ethics Complaint-Discriminatory Denial of Advancement Opportunities Enforcement of an Unwritten "No Jumping Roles" Rule, and Violation GXO Corporate Policies & Core Values.*

35. The complaint set forth the following:

*GXO Corporate*
*Ethics & Compliance*
*2 American Lane*
*Greenwich, Connecticut 06831 USA*

*November 19, 2025*

*Regina Robinson*
*Customer Service Representative – 4th Shift*
*GXO Hanahan, SC 29410*
*843-789-9535 (M)*
*regina.robinson@gxo.com*

*RE: Formal Ethics Complaint – Discriminatory Denial of Advancement Opportunities, Enforcement of an Unwritten "No Jumping Roles" Rule, and Violation of GXO Corporate Policies & Core Values*

*Dear GXO Corporate Ethics,*
*I respectfully submit this formal complaint requesting an immediate ethics investigation into a pattern of discriminatory, inequitable, and policy-violating conduct occurring at the GXO Hanahan, SC location. These actions have directly restricted my ability to pursue career opportunities despite meeting all written eligibility requirements and qualifications.*
*The unwritten "no jumping roles" rule—created and enforced locally at GXO Hanahan—contradicts GXO's documented policies, corporate governance standards, ESG commitments, and the Core Value: Be Inclusive. This unwritten and inconsistently applied rule has been used repeatedly to deny me advancement opportunities for which I was fully qualified, eligible, and approved by my supervisor and on-site HR.*
*I request Corporate Ethics' immediate intervention.*
*----------------------------------------------------------------------*
*Background and Employment History*
*I joined GXO Hanahan through a temporary service in January 2024 and became a direct GXO employee on April 15, 2024. I am an experienced accounting, logistics, and operations professional with:*
- *Master of Accountancy*
- *Bachelor of Business Administration*
- *18+ years in accounting and operations*
- *7 years in supply chain management and logistics*
- *Almost 24 months of direct GXO experience*
- *Documented strong performance, professionalism, and responsiveness*

*Due to working 4th shift (Friday, Saturday, Sunday 6a–6p), the warehouse is often not fully staffed. Because of this, I have become extremely well-rounded and have gained significant cross-functional experience. I frequently fulfill responsibilities in the following departments to name a few:*
- *Outbound*
- *Receiving*
- *Manifest*
- *Shipping*
- *Picking*

*I am also \*\*PIT certified\*\*, further demonstrating my operational versatility and ability to support the site beyond my designated job title.*
*At GXO Hanahan - why has the focus has been placed solely on my current job title of Customer Service Representative, while my broader background—including advanced degrees, credentials, operational versatility, and extensive experience—appears to be overlooked? Why is GXO – Hanahan assigning more weight to a title I've held for less than two years rather than considering my years of experience, education, proven work ethic, and overall qualifications?*

9

*During onboarding, employees were explicitly told:*

*•      Internal transfer eligibility requires one year in the current role OR earlier transfer with supervisor and HR approval*

*•      Internal applicants who meet job qualifications are guaranteed an interview*

*•      These guidelines are documented in KB0066876 – Submit an Application for an Internal Position*

*However, these policies have not been honored in my case.*

*------------------------------------------------------------------------*

*The Unwritten "No Jumping Roles" Rule*

*Senior Manager Warren Hicks informed me that I was not allowed to apply for Supervisor or Manager positions because "GXO does not jump roles internally." His direct quotes include:*

*•      "GXO does not typically 'jump roles' internally."*

*•      "A lead would not move directly to manager without being a supervisor first. This applies to your current role as well."*

*I immediately requested written documentation of this alleged policy.*

*For more than six weeks, despite follow-up emails and verbal requests to Warren and HR, no written policy was provided.*

*Finally, on September 9, 2025, after repeated inquiries, Warren admitted there is no written policy supporting the "no jumping roles" rule.*

*Despite acknowledging this, the rule continues to be enforced—selectively and only against me.*

*------------------------------------------------------------------------*

***Inconsistent and Potentially Discriminatory Application***

*The "no jumping roles" justification is not applied consistently. For example:*

*•      GXO Hanahan hired a recent college graduate with no prior work experience directly into a Supervisor position.*

*•      Meanwhile, I—with substantially more experience and stronger qualifications—was told I was not allowed to apply because of the alleged "title jump."*

*This disproves the justification used to block my advancement and shows inconsistent application that results in discriminatory impact.*

*Additionally:*

*•      I have applied for at least six internal GXO positions.*

*•      I have never received an interview, even though GXO policy states qualified internal applicants are guaranteed one.*

*•      On 11/11/25, after my most recent job application that would qualify as an internal transfer, HR informed me that the recruiter rejected my internal application because I was "not eligible due to the title jump."*

*•      This statement came from an external recruiter—indicating the Hanahan unwritten rule is being treated as corporate policy.*

*This reveals systemic misinformation and a breakdown in GXO hiring governance. ------------------------------------------------------------------------*

*Violations of GXO Corporate Values and Policies*

*The following GXO commitments appear directly contradicted at GXO Hanahan:*

10

- *"We ensure equal opportunities for everyone."*
- *"We maintain a workplace free from discrimination and retaliation."*
- *"We build inclusive career paths that help diverse teams thrive."*
- *"Opportunity should have no limits." – Bill Fraine (former GXO CCO)*

*My experience stands in direct opposition to these principles.* ------------------------------------------------------------------------

*Attempts to Resolve Through Proper Channels*

*I have taken every appropriate internal step to resolve this issue, raising concerns with:*

- *My direct supervisor, Jo Prince*
- *HR representative, Paulese Harrison*
- *HR Senior Manager, LaTessia Grice (Paulese communicated with LaTessia)*
- *Senior Manager, Warren Hicks*

*Despite these efforts, my questions have went unanswered, contradictory information continued, and the unwritten rule remained enforced.*

*Request for Corporate Ethics Investigation I formally request investigation into:*

A.    *The unwritten "no jumping roles" rule*
B.    *The selective and inconsistent application of advancement standards*
C.    *Leadership's refusal to provide documentation for weeks*
D.    *The blocking of interviews despite meeting qualifications*
E.    *The discriminatory impact of enforcing an undocumented rule*
F.    *The communication of a non-existent policy to external recruiters*

-------------------------------------------------------------------

*Evidence Available Upon Request*

*I can provide emails, HR correspondence, recruiter messages, application confirmations, relevant policy documents, and supporting materials.*

-------------------------------------------------------------------

*Requested Corrective Actions*

*I respectfully request:*

1.    *A full Ethics investigation*
2.    *A written corporate determination on the "no jumping roles" rule*
3.    *Immediate cessation of the practice if not a valid corporate policy*
4.    *Fair review of my submitted internal applications, including interviews*
5.    *Equal and unbiased consideration for future opportunities*
6.    *Anti-retaliation protections*
7.    *Corrective training for site leadership and HR*

-------------------------------------------------------------------

**Closing Statement**

*I believe in GXO's mission and values. I joined with the expectation of fair opportunity, integrity, and an inclusive workplace where qualifications and performance matter. I want GXO to operate in alignment with the values it promotes.*

*I appreciate Corporate Ethics' attention and request timely follow-up.*

*Respectfully submitted,*

11

36. In December 2025, Ms. Robinson was contacted by recruiter, Bailey Hawkins and informed that she would be interviewed for the SC Site Manager Position that she had already been deemed ineligible for because of role/title jumping. Ms. Robinson was interviewed on December 30, 2025, by Director Scott Bruce. Ms. Robinson requested feedback by email but did not receive a response. Ms. Robinson was only interviewed because of her complaint.

37. On January 15, 2026, Ms. Robinson was contacted by Ethics Investigator, Abir Sultana regarding interview feedback. Investigator Sultana informed Ms. Robinson that Paulese Harrison would be providing feedback regarding the interview with Scott Bruce. Harrison called Ms. Robinson and Ms. Robinson requested that the feedback be provided in writing because she was driving. Harrison informed Ms. Robinson that she would have to ask Ethics for permission to provide the feedback from the interview in writing. Ms. Robinson again requested the feedback in writing, Harrison then referred Ms. Robinson to Senior HR Manager Grice who informed her that feedback is only verbal according to policy.

38. From February to March of 2026, Ms. Robison received several excuses regarding the ethics investigation being delayed.

39. On April 6, 2026, Ms. Robinson received the final findings from Sultana regarding the Ethics investigation regarding the following:

**Substantiated:** There is no written or formal "no jumping role" policy.

**Substantiated:** There was significant miscommunication/frustration caused by the department.

**Unsubstantiated:** Claims of discriminatory behavior (Ethics found no evidence).

**Unsubstantiated:** The claim that internal candidates are guaranteed interviews.

40. During the investigation the reason for Ms. Robinson not being selected was changed from "not meeting preferred qualifications "to found a better candidate." Ethics refused to provide the information in writing.

41. On April 13, 2026, Ms. Robinson filed a charge of discrimination with the EEOC/SCHAC.

42. Two months after filing her ethics complaint and weeks after filing her charge of discrimination, Ms. Robinson was informed that she was now being investigated for a conflict of interest due to the fact that her husband and her own a trucking company. In 2024, the trucking company had a pause in operation due to a significant slow in work. Ms. Robinson informed the onsite HR rep of the business and she informed Ms. Robinson that there was no conflict of interest. Ms. Robinson informed the Defendant that there is no conflict of interest because her business does not compete with Defendant locally. The Defendant stated that there is conflict because they have drayage business in other locations. The Defendant has informed Ms. Robinson that if she does not disassociate herself with the business she will be terminated from her employment.

43. That each of the reasons provided by the Defendant for failure to promote, failure to hire, and possible termination were pretextual.

44. That Defendant was wrongfully discriminated by failing to hire her, promote her and threatening to terminate her employment in violation of Title VII, and 42 U.S.C. Section 1981.

45. Defendant's actions described herein were intentional and inflicted upon Plaintiff severe mental and emotional distress.

46. As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, loss of promotion, loss of benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries for all of which she should be compensated.

47. That the Plaintiff was issued certain policies and procedures by the Defendant. The Defendants violated the policies and procedures by failing to follow the actual policies in place against discrimination, hostile work environment and retaliation.

48. That as a result of Defendant's actions regarding retaliation, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which she should be compensated.

49. Defendant engaged in policies and practices which willfully, intentionally, and unlawfully discriminated against Plaintiff on the basis of her race, and retaliation for her complaints.

50. That the Plaintiff's coworkers who were Caucasian were treated more favorably in promotion, work assignments, work enviroment and employment.

51. That the Defendant's actions towards the Plaintiff violated the law.

52. That the Defendant is the direct and proximate cause of damage to the Plaintiff.

14

53.     That, as a direct and proximate result of the Defendant's intentional unlawful actions towards the Plaintiff based on the Plaintiff's race and retaliation, the Plaintiff:

   a.     Suffered lost wages and benefits;

   b.     suffered severe emotional distress;

   c.     suffered future lost wages and future lost benefits;

   d.     suffered economic damages;

   e.     changes in the terms and conditions of employment;

   f.     harassment and hostile work environment;

   g.     Possible Loss of employment;

   h.     Possible Loss of Future employment;

   i.     incurred attorney fees for this action;

   j.     incurred costs of this action; and

   k.     will incur future attorney fees and costs.

54. That the Plaintiff is entitled to an award of damages in the amount of actual damages, compensatory damages, consequential damages, punitive damages, attorney's fees previous, future and present, costs of previous future and this action, and other damages such as this Honorable Court deems appropriate and just.

55.     Pursuant to Title VII and 42 U.S.C. Section 1981, Plaintiff also seeks compensatory damages including future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses.

56.     Plaintiff seeks all back pay and fringe benefits to which she is entitled under the law, as well future damages, and liquidated damages under the act.

57.   As Plaintiff is seeking damages under Title VII and 42 U.S.C. 1981 for race discrimination pursuant to the law and Plaintiff also demands a jury trial as to all claims.

### FOR A FIRST CAUSE OF ACTION
### RACE DISCRIMINATION IN VIOLATION OF TITLE VII
### AND 42 U.S.C. SECTION 1981

58.   That Paragraphs one (1) through fifty-eight (58) are hereby incorporated verbatim.

59.   That the Plaintiff, Ms. Robinson is an employee as defined by Title VII and 42 U.S.C. Section 1981.

60.   That the Defendant, GXO, is an employer as defined by Title VII and 42 U.S.C. Section 1981.

61.   That the Plaintiff has been treated differently based on her race by the Defendant.

62.   That the Plaintiff was subjected to discriminatory conduct when the Defendant failed to promote her for all positions applied for pursuant to 42 U.S.C. Section 1981 and those provided in the charge of Discrimination pursuant to Tile VII.

63.   That the Plaintiff was treated less favorably than Caucasian employees by the Defendant failing and refusing to hire her for promotion and threatening her with termination for an alleged conflict of interest.

64.   That the Caucasian employees were not subjected to the same discipline or failure to promote the Plaintiff.

65.   That the Plaintiff participated in a protected act when she reported ethical violations, and discrimination.

66.   That the Defendant allowed the Plaintiff to be discriminated against based on her race in violation of their own policies and procedures and the law.

67.   That the Defendant failed and refused to correct the behavior.

16

68. That the Defendants discriminated against the plaintiff based on her race, treated her differently based on her race and failed and refused to treat all employees the same.

69. That the Defendants subjected the Plaintiff to discrimination in violation of the law.

70. That, as a direct and proximate result of the Defendants' intentional, unlawful and retaliatory actions, the Plaintiff:

   (a)    Suffered severe emotional distress;

   (b)    Suffered lost wages and benefits;

   (c)    Suffered future lost wages and benefits;

   (d)    Incurred attorney's fees and costs of this action.

71. That the Plaintiff is entitled to an award of damages in the amount of actual damages, compensatory damages, consequential damages, attorney's fees, costs of this action, and other damages such as this Honorable Court deems appropriate and just.

**FOR A SECOND CAUSE OF ACTION**
**RETALIATION FOR COMPLAINTS REGARDING RACE DISCRIMINATION**

72. That Paragraphs one (1) through seventy-two (72) are hereby incorporated verbatim.

73. That the Plaintiff is an employee as defined by Title VII and 42 U.S.C. Section 1981.

74. That the Defendant is an employer as defined by Title VII and 42 U.S.C. Section 1981, and subject to the laws and policies and procedures of the federal government.

75. That the Plaintiff has filed complaints regarding ethical violations, race discrimination, and harassment/hostile work environment to management. As a result of those complaints the Plaintiff has further not been promoted and is now being threatened with termination.

76. As a result of those complaints the plaintiff has been treated differently and subjected to retaliation.

17

77. That the Plaintiff was considered an exemplary employee but has not been promoted for pretextual reasons and is being threatened with termination whereas other Caucasian employees are not subjected to the same treatment.

78. As a result of the Plaintiff's complaints regarding discrimination based on her Race, Ethics and failure to hire the Plaintiff has subjected to changes in terms and conditions of her employment and threatened with termination.

79. The Defendant's actions described herein were intentional and inflicted upon Plaintiff to insure severe mental and emotional distress.

80. As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which she should be compensated. Including, future losses related to refusals to provide appropriate raises and positions.

81. That the Defendant is the direct and proximate cause of injury to the Plaintiff.

82. That the Plaintiff is entitled to an award of damages from the Defendant. That the Plaintiff is entitled to recover damages from the Defendant in the amount of actual damages, consequential damages, punitive damages, reasonable attorney's fees, the costs of this action and all other damages available pursuant to Federal Law.

## FOR A THIRD CAUSE OF ACTION

## HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII AND 42 U.S.C. SECTION 1981

83. That Paragraphs one (1) through eighty-three (83) are hereby incorporated verbatim.

84. That the Plaintiff was an employee of the Defendants.

18

85. That the Defendant is an employer in accordance with Title VII and 42 U.S.C. Section 1981.

86. That the Defendant subjected the Plaintiff to a hostile work environment.

87. That the Plaintiff's work environment was abusive, to the point of severe and pervasive.

88. The Plaintiff was subjected to discrimination based on her Race.

89. That the Defendant failed and refused to address the situation.

90. That the Plaintiff suffered severe emotional distress as a result of the Defendant's hostile work environment based on the Plaintiff's Race.

91. That the Plaintiff's severe emotional distress was foreseeable as a result of the severe and pervasive work environment that the Defendant subjected the Plaintiff.

92. That the Plaintiff has been damaged as a result of the Defendant work environment.

93. That the Defendant is the direct and proximate cause of damage to the Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE plaintiff prays that this Honorable Court:

A. Accept jurisdiction over this matter, including the pendent claim;

B. Empanel a jury to hear and decide all questions of fact;

C. Award the Plaintiff lost wages, future lost wages, lost benefits and future lost benefits;

D. Award to plaintiff compensatory and consequential damages against the defendant;

E. Award to plaintiff punitive damages against the defendant for their malicious and spiteful pattern of sexual discrimination;

F. Award to plaintiff All damages available to the plaintiff damages against the defendant for their malicious discrimination against the plaintiff in violation of Title VII and 42 U.S.C. Section 1981;

19

G.  Award to plaintiff the reasonable attorneys' fees and costs incurred in the prosecution of this matter;

H.  Award all damages available to the Plaintiff pursuant to Federal Law;

I.  Permanently enjoin the defendants, their assigns, successors, agents, employees and those acting in concert with them from engaging in discrimination, disparate treatment or retaliation against plaintiff and

J.  enter any other order the interests of justice and equity require.

HUNT LAW LLC

*s/Bonnie Travaglio Hunt*
Bonnie Travaglio Hunt
Post Office Box 1845, Goose Creek, SC 29445
4000 Faber Place Drive, Suite 300
North Charleston SC 29405
(843)553-8709

Dated:  June 4, 2026